Are you familiar? Are you back? Are we here earlier at all? Yesterday I was here. Yes. That's what I thought. Very familiar. I was going to say, am I losing my mind or have I seen you before? You're right. I was here yesterday. Good morning, Your Honors. And you're memorable. Think of it that way. Thank you. Found in. Found in case. May it please the Court, Christy Hughes on behalf of Mr. Ramirez. The District Court misstated the law when it ad-libbed a jury instruction that there could be no breaks in the surveillance of Mr. Ramirez for him to be under official restraint and not guilty. Under this Court's case law, brief breaks don't defeat official restraint. So what difference does it make? Let's say we agree with you that that ad-lib was not a correct statement of the law. Was there any evidence here suggesting that the jury could have found differently on the wrong instruction about the, you know, what evidence was there of a brief break? Well, the scope operator's report, Your Honor, and that's what the jury asked for. After Judge Burns Allen charged the jury, the next question was, can we have the scope operator's report at the shift change? And so we know that the night shift operator was surveilling Mr. Ramirez. And so I think the jury had zeroed in as the basis for their verdict. Was there a break between the night shift operator and the day shift operator of the scope and how long that break was? Was it just sort of— Well, when you say, counsel, forgive me, but in response to Judge Chen's question, if you could just—I don't want to go too far without—you said we know that. The jury didn't know that. Are you referring to the prosecutor's statement that was made off record when there was a discussion with the judge? I can represent that the scope operator would say— Well, I'm referring to the jury's note asking for the scope operator's report. You just said we know that, and you're referencing the state of what happened that evening about what the scope operator did. And I think the point is that the jury didn't hear from the scope operator. Oh, I apologize. So Agent Stallings talked about how the scope operator had been watching Mr. Ramirez and had reported to the night shift agents, okay, I saw someone in the bushes, and they weren't able to find him. So that's what I'm referring to is we know at least at some point that the scope operator was surveilling Mr. Ramirez. Well, isn't that the reason for the judge's comment where he said, well, there's a reasonable inference to conclude, constant surveillance, which seems to me otherwise to be pretty disembodied from the record. That's what I struggled with in this record. I guess I disagree. I think the judge's point was, well, we know that he was— the scope operator was surveilling him at this point before the shift change happened, and we don't know if he stopped, when he stopped, if there was a break between the night and the day shift because the government didn't call either of the scope operators to testify. And so that, I think, was his point is, given their burden, that's the way the evidence sort of played out is we can— especially given the intense surveillance in that area where Mr. Ramirez was found, I think the judge was saying the inference, you know, as it is here, is there was continued surveillance. Except they couldn't—that's what's so confounding, right? It wouldn't have been brief, and they couldn't find him. They went out once to try to find him and couldn't find him. So I'm left with wondering what to do with this. Well, I think we have to be clear about the different agents. So the night scope agents are the ones surveilling him. The agents in the field are the ones who can't find him. Right, but it's not like the night scope— they told him where to go look, and they couldn't find him. So the notion— But that doesn't mean they stopped watching him. But we're left not knowing was there testimony about were those guys in— were they in radio contact? Did they say, we're out here, we can't see him? Was there—is there any of that in the record? There's not between— there's just Agent Stalling saying that he wasn't directed by the day shift scope operator, but there's no testimony about whether the day shift scope operator was continuing to watch and just not radioing. There's just no evidence about what they were— But we don't know why they couldn't find him when they went out there or whether they just came back, as far as we can tell from our record, is they came back and couldn't find him and the next shift did. Correct, correct. And so I think the inference, as Judge Byrne said, was, well, they continued to watch. Maybe they weren't in radio contact, but we know that they were surveilling, and there's no evidence that they ever stopped. And so if the jury then hears, well, there's no breaks allowed, the jury's trying to figure out, well, there was probably a break between the shift change. That's what the basis of their note was. And especially coming after the Allen charge, I think that leads us to conclude that the basis of their verdict was on official restraint and what happened at the shift change. Was it brief? Was it longer? And given this court's case law, it can't be harmless beyond a reasonable doubt because if it's a brief break, it doesn't defeat official restraint. So your theory is that the break in question that the jury may have been wondering about was just the shift change break? Yes, because that's the surveillance. What the agents are doing in the field isn't necessarily— No one testified that they had him under surveillance. Agent Stallings said, I didn't know where he was. I was looking in the bushes. And so the night and day shift agents that are out in the field don't really go to the surveillance. The surveillance, I think, based on the jury's note and on the facts of the case and Judge Burns's point— If there was no evidence of that, though, what you're talking about, there's no evidence of that. So if I were the judge in that situation, I wouldn't give something to the jury on speculation that there was no evidence of. Well, to respond— You can't put evidence into that effect. I mean, not you, but you're—not you personally because you're doing the appeal. But if you had been doing—you didn't do the trial, right? No, I did not. Yeah, but someone could have done that. But, you know, once the evidence is over and then the jury has questions, the court just can't make up what's not there. Two, possibly three responses, Your Honor. The first is it wasn't speculation. There was testimony that the night scope operator was surveilling him. Except there was a break in their duty, right? Yes. We just don't know how long. I mean, I don't know how this works because they didn't testify, but I don't know if they just pass it off to the next one and it's just a momentary break. Was there testimony that surveillance was picked up immediately after the transition, after the break? No, there was no testimony about what happened at the shift break. That's why the jury was trying to fill in the gaps and asking for a report. But if there was no testimony, how could the perception of there only being a short break— how could there be any such perception that might have been influenced by the errant instruction if there was no testimony of what happened after the break? It's not a short break. The evidence shows it just stopped. Well, I think the inference from the record is that there's someone operating that scope. And so once there's a shift change, the day shift, the inference is that the surveillance continues. We just don't know how long of a gap there was. To follow up on Your Honor's point, this wasn't a theory of defense instruction,  this is an element that the government— No, I know it's an element. I realize that it's an element. One of the dumbest elements I've ever heard of, but I accept and realize that it's an element. But so just to be clear, it's not something that, you know, we'll question the judge. No, I agree. Once he chooses to define official restraint, he needs to do it. But on the other hand, had there been evidence to that effect, then the court would have been in a different situation. And it doesn't change the burden of proof, but it would change the body of evidence that a judge would be looking at when you get a question from a jury. I understand that. I mean, I think for the judge that was sitting there, he at least thought the state of the evidence led to a fair inference, is what he said, that the scope operators never stopped watching Mr. Ramirez. That it's a fair inference there was constant surveillance. Correct. But this, again, it has to be read in the context of the trial. So this is after the scope operators report. The prosecutor also says in the record, I think it's ER 162, well, if we have to retry this case, I'm going to call the scope operator next time. I mean, everybody was zeroed in. Doesn't he at that point say, and I can represent the scope operator, would say, blah, blah, blah, and the jury didn't hear that, right? Well, he says, yeah, the scope operator, one of them was out of town. I think that's the night scope operator. I'm referring to a different part of the record, but I'll find it. Go ahead. I didn't want to use your time. I think he does perhaps say, well, there's no evidence that, you know, there was, that they continued. But we also, no one ever talked about what the day shift operator would say, and that person wasn't called either. Do you want to save rebuttal time? I'll make a brief point about the supervised release, and then I'll try to save the rest. Just two points showing from the record that this was unambiguously not an imposition of a supervised release term. The first is the context of the sentencing hearing. Everybody was confused at the end of this hearing, how many counts, which statutes were on. And so the judge was trying to clarify that the previously imposed sentence and term of supervised release was too long for this 1325 count. That's the basis for the judge saying, oh, I think that the term is one year. Second of all, this isn't how this court or any other court imposes a term of supervised release. He says, I think the term. This is not, when he previously imposed sentence, it was very clear. I've imposed sentence. These are the terms. Here's a special assessment. These are the conditions for supervised release. He never clearly imposes it. He says this, I think, which is not a clear imposition of supervised release. He doesn't mention the conditions. He never says it's going to run concurrent to the other term. Are you just saying we should remand it and let the judge clear it up? No. I think because the record is, because the oral pronouncement is unambiguous, this court needs to strike the term from the judgment because the unambiguous oral pronouncement controls. I'll save my 48 seconds for rebuttal. I'm looking at or was thinking about the excerpt just so you know, 155, 156, the transcript. Do you want me to look at it now? I'm just letting you know what I was referring to so you have a chance to look at it. Okay. Thank you, Your Honor. Thank you so much. Good morning. May it please the Court. Zach Howe on behalf of the United States. There was no minor gap period issue in this case. From the opening argument to the closing arguments and everything in between, the government's argument was consistently that Ramirez hadn't been seen for hours. And on the other side, Ramirez's argument was that the scope operator just kept looking at him. So, in fact, the exact words were that the scope never took its gaze off of Ramirez or it never actually lost a visual. I can't figure this out. The part that I was referring to is at 155, 156 and Mr. McClain. Correct. Prosecutor? That's correct. Your Honor, just for the record, the discovery that's been disclosed in the audio tapes indicate that the scope operator who was on duty had said, or the defendant, and then the judge jumps in and says, her point, apparently defense counsel was female, her point is that you didn't put the evidence on. He gets as far as saying, aye. And the judge said, so the jury doesn't know that. The state of the record is of fair inference that he was continually in touch with the scope and there may have been. I think that means may have been constant surveillance. So I kind of read this record, I think, first time through, I thought. If there was a break, it wasn't a minor break because this person was curled up in a fetal position under the bushes and they couldn't find him for a period that sounds like hours. But defense counsel has clarified that there may have been room for the jury to think that they were watching through the scope constantly and there was just a shift change, which would be a minor break. So could you address that? Sure. So I don't know that there's any evidence to support that speculation. In fact, until this oral argument, I thought the theory was, the implicit theory was that the scope operator must have just stayed past his shift change and kept watching. So I'm learning about this new theory for the first time here, but I just don't think there's any evidence to support that speculation. The speculation that there was constant surveillance, is that the speculation here? Or even that there was a shift change and that there was constant surveillance during that shift change. In fact, what Agent Stallings says, this is at page 99 and 100 of the record, he says that the night watch agents told him that the scope operator lost sight of Ramirez. I can give you the exact quote. He says that the previous shift at some point saw a heat signature on the scope and that's the last they had of it. They couldn't find it anywhere. Excuse me, did the jury hear this? Yes, that's Agent Stallings' testimony. Go ahead, please. Now I'm with you. The jury heard it and could you please repeat it? Repeat the quote, sure. So the quote that Agent Stallings gave was that the night watch agents told him that the scope lost a visual by saying, and this is the quote, the previous shift at some point saw a heat signature on the scope and that's the last they had of it. They couldn't find it anywhere. So he's talking about the scope operator. He says they couldn't find it anywhere. What do I make of the trial? And then I'm going to get out of your way, but what do I make of the trial judge's statement to say it's a fair inference that he was continuing to watch through the scope and there may have been constant surveillance is my paraphrase of the judge. Sure. So I think that needs to be read in context with the eight pages that came before that. So 147 to 153, the court talks about just how implausible it actually finds the official restraint theory. In fact, 152, there is a relevant quote where defense counsel has just finished citing some of the minor gap cases like Pacheco Medina, and the court says that's not this case at all. There was no observation for some period of time. There was a complete lack of law enforcement personnel. Cases that I've read were cases where somebody's running away and they go around a corner and it really is a very minor momentary gap. That's right. And so the court is saying, I don't think this is plausible at all, but what the court ends up saying at page 155 is it's going to let the inference be drawn. The court has said earlier, I'll let you argue that. I've given you the instruction. It says I think this is actually an incredibly favorable instruction for the defense, but I'm going to let you argue it. But the court is clear that it doesn't find this theory plausible. But it found that it was an inference that could be drawn by the jury. That's correct. So in other words— If they had drawn that inference with the proper instruction, there may have been—could have found enough doubt. Correct. But I think there's a wide strike zone as to what instruction to give. We're not saying that the court erred by having given the official restraint instruction and then defined it. But when it comes to whether the court needed to clarify that continuous observation could include minor gaps, that piece, there was nothing but speculation for that. In fact, I think Castellanos-Garcia is directly on point. In that case, this court held that when the apprehending agent didn't have eyes on the defendant when he crossed and wasn't helped by anyone who did, that was sufficient to show beyond a reasonable doubt that the defendant was not under official restraint. And that was the case even though there were 15 other agents in the area, even though there were censors in the area. The court said—this is the exact quote. It said, A trial is not the place to test the limits of imaginative musings. And so here we have pure speculation that maybe this agent either stayed two hours after a shift change or maybe some other agent came out and caught sight of him, even though Stalling's testimony is to the contrary. But that's all speculation. It wasn't the government's burden at that point to knock down those hypothetical scenarios. Ramirez could have subpoenaed the scope operator. They simply didn't do that. What do we make of the jury's request to see the report, the scope from night shift to day shift? It seemed like they were focused on this question, weren't they? Certainly. And the best I can make of it, given that, again, there was no evidence to support this notion that there was continued observation through the scope, is the jury is looking for any evidence to support defense's theory because there was none at trial. And they didn't get any evidence because the court couldn't give them something that wasn't in the record, and so the jury convicted. So I really just see that note as the jury saying, Is there anything to substantiate this speculation? And there wasn't. So I don't think that note shows error here, certainly. So just to clarify what I'm saying, I think because there's no minor gap theory at issue, then the court didn't need to clarify continuous observation. So when you say at issue, not to be picky, but you think the evidence doesn't support a minor gap theory because she says she's got one. She's got a theory at issue in the sense that, you know what I'm saying? Right. Do you mean that the evidence doesn't support a minor gap theory? I mean two things. The evidence doesn't support a minor gap theory, and even regardless of what the evidence. Well, you're saying no good deed goes unpunished. Under abuse of discretion, you would be arguing that you didn't have to give that instruction, but the court was generous, gave that instruction, and then when there was a question, the court looked, there was no evidence, and that was the court's response. I think that's correct. What about appellant's counsel is saying that because there's a discrepancy, that it shouldn't go back and be clarified. We should just strike it. The supervised release? Yes. I think that statement at the sentencing was anything but clear. The court says that I think the maximum sentence, supervised release sentence for 1325 is one year, so the three years appends to the 1326 sentence. What that could have meant is I'm only imposing one year for the 1325 because that's all I can impose, and there's three years for the 1326. Or the court could have meant because I'm already imposing three years for the 1326, I won't impose anything for the 1325. If there's two ways to look at it, do we send it back and just ask the court to tell us what? Or if you're saying if there's two ways to look at it? Then the written judgment, which is unambiguous, controls, and it imposed that one year of supervised release. I don't think we let you finish answering the question about what did you mean when you said that there's no minor break theory. Sure. So number one is that regardless of what the evidence showed, there was no argument at all about a minor break by either party. But I also think that none of the closing, in fact, the argument was that the government never actually took its gaze off Ramirez or that it never actually lost a visual of Ramirez. That's at page 128 and 29 and 131 of the record, or at least that the government never proved otherwise. So there's no argument to that effect. And then the second point is simply that there's no evidence to that effect. In fact, I would submit that the evidence showed overwhelmingly that there was a two-hour gap in the apprehension and the first sighting of Ramirez. Thank you. Thank you. Just to clarify, Judge Callahan, this wasn't a response to the jury question. This was in the instruction on the elements. So this wasn't in response to when the jury asked about the definition of official restraint. This was made earlier than that. This? What are you referring to? I'm sorry, the misstatement about there can be no breaks. This came just in the original jury instructions. What about the fact that there was no argument? It wasn't even argued to the jury about a minor break. Is that true? Well, I don't think it came up in closing argument explicitly, but this was an issue in the case. If Your Honors look at the jury instruction conference, and I was unable to find the site just a second ago, but defense counsel is asking. But doesn't that inform our analysis of harmless error if we were to find error, the fact that it was not even argued in closing argument and presented to the jury as such? I don't think so, given the facts. Again, the jury asking for the break between the night and the day shift operator. We have to focus a harmless error analysis in terms of what your defense is. And we respect the attorneys from that. And if something goes to the heart of what your defense is, then it's less likely to be harmless. But on the other hand, when that wasn't even argued and it's not the defense, then it kind of cuts against you the other way. Well, two quick points, Your Honor. Given the case law about breaks in the circuit, it's always an issue of how long that break is, especially on these facts. But second of all, it came up at the jury instruction conference where defense counsel was saying to the judge that she wanted the specific language about being free to go at large in the population, given the issue and the government's position on breaks in this case. And I can submit a 28-J because I was unable to find the exact site when I was just looking for it right now. But that's in the jury instruction. We'll find it. All right, thank you both for your argument. This matter will now stand submitted and court is in recess for the week. Thank you. All rise.
judges: Callahan, Christen, Chen